MONONA COUNTY, Appellee, v. JAMES O'CONNOR et al., Appellees; GENERAL CASUALTY & SURETY COMPANY, Appellant.

OCTOBER 25, 1927.

REHEARING DENIED APRIL 5, 1928.

*Kennedy, Holland, De Lacy & McLaughlin* and *Underhill & Miller*, for appellant.

*Prichard & Prichard* and *Oliver P. Bennett,* for appellees.

STEVENS, J.—I. This is an action brought under the provisions of Section 10313, Code of 1924, to adjudicate the rights of claimants to a fund of $6,100.20, final estimate on a highway improvement in Monona County, known as Federal Project No. 184; but, as finally tried and submitted, it assumes a much broader aspect.

The controversy on this appeal is between C. J. Hysham, McElwain & Son, Van Eaton Company, John Mathys, Ethel Taylor, Arley Waugh, and E. L. Hogue, all of whom filed claims  in the office of the county auditor for allowance and payment out of the fund in question, and the appellant General Casualty & Surety Company, surety on the bond of the contractor. All parties appeared and filed appropriate pleadings, praying the relief usually sought in such cases and other relief hereafter stated. The contractor defaulted on his contract, and the work was completed by appellant, who demands payment of the entire fund, which is now held by the clerk of the district court of Monona County to abide the result of this litigation. The fund includes 10 per cent of the monthly estimates reserved by the county under the contract for the improvement, and also the balance due on the final estimate of the work.

The case was tried and submitted in part upon the theory that the bond in question is the bond required by Chapter 347, Acts of the Thirty-eighth General Assembly (Chapter 452, Code of 1924), to be given by public contractors, and no reference is made by counsel to any of the provisions of the statute relating to Federal and state projects for the improvement of the public highways; and we shall so treat it in disposing of the appeal. The improvement was completed in November, 1923, and the claims of Hysham, McElwain & Son and the Van Eaton Company were filed within four months after the date of the last item of their respective claims; but the claims of the other par-

ties named were not so filed. Section 2, Chapter 347, Acts of the Thirty-eighth General Assembly, as amended by Section 1, Chapter 147, Acts of the Thirty-ninth General Assembly, is applicable, if the claimants have standing under the statute, and under it all provable claims must have been filed within four months after the date of the last item. *Francesconi v. Independent Sch. Dist.*, 204 Iowa 307.

The contention of appellees that the filing of claims within the period required by the statute is not essential where the controversy involves only the question of distributing the fund among competing claims which are contractual in character will be later discussed.

None of the claims are for labor performed or material furnished to the contractor or subcontractors. They include claims for groceries, board, and rental, for *equipment* for horses and mules and equipment used by the contractor, and for hay and pasture. The statute in force at the time the several claims arose provided for the filing of the claims in the office of the county auditor, for labor performed and material furnished for a public improvement. This statute was later amended, so that the term "material" is now defined, in addition to its ordinary meaning, so as to "embrace feed, provisions, and fuel." Section 10299, Code of 1924. This statute went into effect in October, with the Code of 1924. All of the claims of appellees arose and the time for filing thereof expired prior to the time the foregoing statute went into effect. It therefore has no application to the facts of this case. *Teget v. Polk County Drainage Ditch*, 202 Iowa 747. As already stated, none of the claims are for material furnished or labor performed upon the improvement, and do not, therefore, come within the provisions of the statute in force and controlling as to claims of the class stated.

II. The remaining matters to be discussed relate to the scope and validity of certain terms and provisions of the bond  which appellees, in effect, classify as non-statutory, and as purely contractual in character. It is essential to a thorough understanding and decision of the questions involved at this point that the pertinent provisions of the bond be kept in mind. They are as follows:

"Now, therefore, the condition of this obligation is such

that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of the failure to do so, and shall fully reimburse and repay the owner all outlays and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal or subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect; and if the said James O'Connor as principal, shall in all respects fulfill his said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, then the above obligation is to be void and of no effect; otherwise to be and remain in full force and virtue in law.''

The two instruments must be construed together. As we have already stated, the bond was executed in compliance with the requirements of the statute, and is statutory in character. The penalty thereof, we must assume, was fixed primarily to meet the statutory requirement of the contract, which was for the construction of a public improvement. Contracts for public improvements of the character described in the contract and bond are let to the lowest responsible bidder. In so far as the bond was essentially and in a primary sense a statutory bond, the obligation is measured by the statute which is a part of it.

It is the law of this state, long established, that the liability of a surety on a statutory bond does not extend beyond the statutory obligations. *Field v. Schricher*, 14 Iowa 119; *United States F. & G. Co. v. Iowa Tel. Co.*, 174 Iowa 476; *Schisel v. Marvill*, 198 Iowa 725; *Zapf v. Ridenour*, 198 Iowa 1006; *Joint Board of Supervisors v. Title G. & S. Co.*, 198 Iowa 1382; *Nebraska Culvert & Mfg. Co. v. Freeman*, 197 Iowa 720. This rule was first declared by this court in *Field v. Schricher*, supra. A supersedeas bond which contained provisions in excess of the obligations imposed by statute was held invalid as to such provisions. The rule and the reason therefor are well stated in *Schisel v. Marvill*, supra, which was an action on a contractor's bond for damages for personal injuries resulting from the tortious or negligent acts of the contractor's employees. We said:

''The effect of this holding is that the liability of a surety

under a statutory bond is measured and defined by the statute; and that a construction of the statute is a construction of the bond. In such a case, the statute becomes a guide to the surety as to the extent of the obligation assumed. Manifestly, if a bond required by statute for purposes defined by statute and in an amount fixed by the statute may be extended voluntarily to cover other obligations than those required by the statute, such extraneous obligations might of themselves absorb the full penalty of the bond and defeat the statutory purpose for which the bond was required. If it be found, therefore, that the purported obligation of the bond by its terms extends beyond the limits fixed by the statute, such excess provisions will be deemed surplusage, and the bond will be enforced in accord with the statute. The authorities are fully reviewed in the cited case, and we shall not repeat them.''

Appellees recognize the rule announced by the court in the above cited cases, but they assert that the same are not applicable to the facts of this case. This contention is predicated upon the so-called independent and non-statutory obligations of the bond and contract. The contractor agreed to ''pay all just claims for materials, supplies, tools, labor and all other just claims, filed against him or any of his subcontractors in carrying out the provisions of the within contract, and further agrees that his bond shall be held to cover all such claims.'' The bond in terms secures the faithful performance of all of the terms, provisions, and conditions of the contract. Both instruments are, therefore, broader than they are required by statute to be. We shall, for the purposes of our discussion, assume that they are broad enough to create independent voluntary contractual obligations which, if valid, entitle appellees to share pro rata in the distribution of the balance due among them, unless the appellant surety has a superior right thereto, as claimed by it.

It has many times been held by this court in cases involving a controversy between claimants who had furnished labor and material for a public improvement, and the surety on a non-statutory bond given to secure the performance of the principal contract, that the rights of such claimants were contractual, and that, as between them and the surety, the statute requiring claims to be filed within a fixed time and in a prescribed form is not applicable. It is upon the rule announced by these cases

that appellees. rely... .The following. fully cover and sustain. the foregoing. proposition: *Green Bay Lbr. Co. v. Independent Sch. Dist.*, 121 Iowa. 663; *City of Boone v. Cary*, 162. Iowa 695; *Streator Clay Mfg. Co. v. Henning-Vineyard Co.*, 176 Iowa 297; *Hipwell v. National Sur. Co.*, 130 Iowa 656; *Wykoff v. Stewart*, 180 Iowa 949; *Iowa Pipe & Tile Co.. v. Parks & Gerber*, 169 Iowa 438; *Haakinson & Beaty Co. v. McPherson*, 182 Iowa 476; *Empire State Sur. Co. v. City of Des Moines*, 152 Iowa 531; *Carr & Baal Co. v. Consolidated Ind. Dist.*, 187 Iowa 930; *Humboldt County v. Ward Bros.*, 163 Iowa 510; *Reynolds v. City of Onawa*, 192 Iowa 398.

With one exception, the. foregoing cases. involved private or non-statutory contracts and bonds. The exception is *Humboldt County v. Ward Bros.* Much reliance is placed by appellee upon this case. It was carefully considered and distinguished. in *Wykoff v. Stewart* and *Iowa Pipe & Tile Co. v. Parks. & Gerber*, supra. We need not attempt to add anything to .the distinction there pointed out. The rules stated do not in any sense conflict with each other, and the latter cases are pertinent only if the validity of the so-called independent contractual provisions of the contract and bond are sustained. A statutory bond is one conditioned upon the statute which is a part thereof, and is given to secure performance of a contract executed in pursuance of and in compliance with such statute. The penalty of the bond, if not fixed by the statute, is prescribed by the officer or body authorized to accept. the same, and the liability thereunder is limited by the statute. The statute in pursuance of which the contract and bond in question were executed, makes the proceeds due the principal contractor liable for. the payment of all claims for labor and material, when duly and properly filed with the proper officer. This, as we have pointed out, does not include groceries nor feed and rental for horses. It . transpires that all claims against the contractor except those of appellees have been paid, and that there re mains a. balance due on the contract sufficient to pay such claims. Is this fact proper to be considered in construing the contract and bond? Let us assume that there was no balance on hand, and that appellees sought to maintain an independent action on the bond,—would they, under the holding in *Schisel v. Marvill*, supra, and the other cases cited, be entitled

to judgment?. It seems to us that they clearly would not. As held in the *Schisel* and other cases, the statute is a part of the bond, and the liability of the surety is strictly limited thereby. The applicable rule of law does not depend upon the mere favorable condition of the account as it affects one of the parties. The law must apply to both parties alike, and the contract be interpreted under all circumstances in harmony with the statute in compliance with which it was entered into.

A question of public policy might arise at this point. Contracts for highway and many other public improvements are let by competitive bids. To secure a proper basis for bidding, it is necessary that the propositions of all bidders be rendered upon the same basis; otherwise, secret favorable terms of the bidders might, in a measure, destroy the theory upon which competitive bidding rests, and result in favoritism and dishonesty in letting contracts. It is our conclusion that the bond must be given effect as a statutory obligation, and that, in so far as the same purports to secure the performance of terms and provisions of the contract non-statutory in character, it is violative of the statute under which it was given, and void.

III. The claim of C. J. Hysham for the rental of horses and equipment necessary in doing the work arises out of a written contract between himself and the principal contractor, by the terms of which the contractor agreed that:

"Said second party further agrees to execute and deliver to first party an assignment for $1,200 on each of his monthly estimates due or to become due, for work done on above men-tioned contract, one for each month for which there shall be rent due under this agreement, and the filing of a copy of this agreement with the auditor of Monona County, Iowa, or the Iowa state highway commission shall constitute a proper order and assignment of such portion of said estimates as may be due to first party and shall authorize said county auditor of Monona County, Iowa, or the Iowa state highway commission to pay the first party said amounts and accept his receipt for the same."

Hysham contends that his claim, which arose before the contractor defaulted, is superior to that of appellant, and that

he is at least entitled to have the amount reserved on the monthly estimates of the engineer paid to him. Others of appellees claim oral assignments by the contractor. It is the contention of appellant that, as it was compelled as surety to pay provable claims, and to complete the contract at great expense, it is subrogated to the rights of its principal, and that it is entitled to the balance due. The question, therefore, at this point is: Have claimants or the surety the prior right to the fund? An assignee of the contractor occupies the same position as his assignor. The claims of the assignee are no higher or greater than those of the contractor. This being true, the surety, who has paid the obligations of the principal, has, by right of subrogation, the prior right to the fund. It is apparently conceded that the aggregate of claims paid and expenses incurred in completing the contract is greater than the balance on hand. But two cases directly in point have been called to our attention: *Lanstrum v. Zumwalt,* 73 Mont. 502 (237 Pac. 205), and *Wasco County v. New England Equitable Ins. Co.,* 88 Ore. 465 (172 Pac. 126). These cases support the foregoing conclusion. Further discussion of the propositions involved is unnecessary. The order and judgment of the court below is reversed. The cause will be remanded, with directions to the court below to order the clerk to turn the fund over to appellant; or the order may be entered in this court, if either party so desires.—*Reversed.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.